UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMAR BELL,

                            Plaintiff,                  Case No. 12-CV-6666 (KMK)

    -v-                                           OPINION AND ORDER

ALEXIS JENDELL, Ph.D, DIRECTOR OF
CORRECT CARE SOLUTIONS, C/O DR. ADLER,

                            Defendants.

KENNETH M. KARAS, District Judge:

Plaintiff Amar Bell, proceeding pro se, brings this action against Drs. Alexis Gendell and Paul Adler for injuries arising out of medical treatment Plaintiff received while incarcerated in Westchester County Jail.[1] For the reasons given below, Defendants' Motion To Dismiss is granted.

## I. Background

### A. Factual Background

Plaintiff's Complaint and accompanying documents can be read to allege the following facts. Plaintiff was incarcerated in Westchester County Jail from at least March 23, 2012, until at

---

[1] In his Complaint, Plaintiff sued Dr. Gendell as "Alexis Jendell." (*See* Compl. at 1.) Defendants noted this mistake in their Motion To Dismiss, (*see* Def.'s Mem. of Law in Supp. of Mot. To Dismiss Pl.'s Compl. ("Mot.") (Dkt. No. 20) at 1), and Plaintiff has used the correct spelling in his subsequent briefings, (*see* Pl.'s Mem. of Law in Opp. to Def.'s Mot. To Dismiss ("Opp.") (Dkt. No. 26) at unnumbered 1). In this Order, the Court will use the corrected spelling. Furthermore, in Part I, section B of his Complaint, Plaintiff lists only "Alexis Jendell" as a defendant. (*See* Compl. at 1.) However, in the caption, Plaintiff listed "Alexis Jendell . . . c/o Dr. Adler." (*See id.*) In their Motion, Defendants construed the Complaint to sue Dr. Adler, (*see* Mot. at 1), and in his Opposition, Plaintiff argues that his claims "should be . . . upheld against Dr. Adler," (*see* Opp. at unnumbered 1). The Court will thus treat the Complaint as properly filed against both Drs. Gendell and Adler.

least April 2, 2012. (*See* Compl. at 3.) Prior to this period, Plaintiff suffered from "acid reflux," a medical condition for which Plaintiff had been prescribed Protonix. (*See id.*) On March 23, however, Plaintiff's prescription "had r[u]n out." (*See id.*) Two days later, on March 25, Plaintiff began to "put in multiple sick call request[s]" after experiencing a number of "acid reflux symptoms," including "shortness of breath[] and vommitting [sic] acid through [his] mouth/nose at the same time in [his] sleep." (*Id.*)[2]

On March 28, three days after his first sick-call request, Plaintiff "met with [Defendant] Dr. Adler." (*See id.*) During the meeting, Plaintiff alleges that Dr. Adler "stated [that] he [would] renew the Protonix [prescription]." (*Id.*) But Plaintiff also alleges that Dr. Adler "was talking on his cell phone while examining [him]." (*Id.*) Thus, even though Dr. Adler "thought . . . he [had] put the order in" soon after the March 28 meeting, Plaintiff "suffered [five] more days of acid reflux symptoms before receiving the Protonix" on April 2. (*Id.*) For this, Plaintiff seeks $9,000,000 in damages. (*Id.* at 5.)

B. Procedural Background

On the morning of April 2, 2012, Plaintiff filed a grievance complaint informing the prison that he had not received his prescription refill. (*See* Compl. at 3; Mot. Ex. B ("Grievance") at unnumbered 2 (Grievance Form Part I).) The grievance was granted and Plaintiff received his medication.[3]

---

[2] Plaintiff also claims that he suffered "panic attacks" and a burning sensation in his throat and nose. (*See* Compl. at 3.)

[3] The Court notes that, although the grievance is referenced in the Complaint, (*see* Compl. at 3–4), it does not consider the grievance for purposes of evaluating Defendants' Motion. However, documents generated as a result of the grievance demonstrate that Plaintiff received his prescription refill on the same day that he filed the grievance. (*See* Grievance at unnumbered 2 (indicating that Plaintiff filed the grievance on April 2 at 8:28 a.m. and that the grievance was

On August 20, 2012, Plaintiff filed the instant Complaint, (*see* Compl. at 7), wherein Plaintiff alleges two claims—inadequate medical care and medical negligence. (*See id.* at 5.) The Court construes the former claim to allege a violation of the Fourteenth Amendment, *see United States v. Georgia*, 546 U.S. 151, 157 (2006) (noting that "the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment" (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion))), entitling Plaintiff to damages under 42 U.S.C. § 1983. It construes the latter claim to allege negligence under state tort law.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted). Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

---

received at 8:45 a.m.); Compl. at 3 (indicating that Plaintiff received the refill "five days" after his first meeting with Dr. Adler on March 28).)

3

(2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir.

4

2004). But the liberal treatment afforded to pro se litigants does not exempt a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B. Analysis

1. Federal Claims

a. Claim Against Dr. Gendell

Defendants argue that Plaintiff has not sufficiently alleged Dr. Gendell's personal involvement in his claims. (*See* Mot. at 2–4.) Indeed, "[i]t is well settled that, in order to establish defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In his Opposition to Defendants' Motion, Plaintiff concedes that his "claims against [Dr. Gendell] should be . . . dismissed." (*See* Opp. at unnumbered 1.) Thus, the Court grants Defendants' Motion with respect to the § 1983 claim against Dr. Gendell.

b. Claim Against Dr. Adler

Plaintiff claims that Dr. Adler provided inadequate medical care. In the Complaint, Plaintiff does not indicate whether he was a convicted prisoner or a pre-trial detainee during the relevant time period. A convicted prisoner's claim is analyzed under the Eighth Amendment. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (noting that the Eighth Amendment governs medical claims of convicted persons because of that Amendment's prohibition of "cruel and unusual punishment"). In the case of a pre-trial detainee, the same claim is analyzed under the Due Process Clauses of the Fifth Amendment for federal detainees and the Fourteenth

Amendment for state detainees. *Compare Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (applying Fourteenth Amendment to state detainee), *with Cuoco v. Moritsugu*, 222 F.3d 99, 103, 106 (2d Cir. 2000) (applying Fifth Amendment to federal detainee). However, Plaintiff's status is of no moment for these purposes, because "[c]laims for deliberate indifference to a serious medical condition . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72.

While prison officials should provide adequate medical care to prisoners, "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To make out a constitutional claim "arising out of inadequate medical care," a plaintiff must demonstrate a defendant's "'deliberate indifference to [his] serious medical needs.'" *Jones v. Vives*, 523 F. App'x 48, 49 (2d Cir. 2013) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). Thus, to avoid dismissal under Rule 12(b)(6), "an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious"; and "(2) subjectively, the defendant official acted with a sufficiently culpable state of mind." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted).

To determine if a Plaintiff alleging inadequate medical treatment has satisfied the objective prong, the Court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused." *Salahuddin*, 467 F.3d at 280. In a case like this, where Plaintiff alleges that a prison doctor's failure timely to refill his prescription constituted inadequate treatment, "the seriousness inquiry is narrower." *Id.* Specifically, "if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption

6

in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (internal quotation marks omitted) (alteration in original). In this context, "[t]he Second Circuit has held that a short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Smith*, 316 F.3d at 186). Moreover, "[w]here temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second Circuit], they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Id.*

With respect to the objective prong, Plaintiff alleges that he suffered five days of acid-reflux symptoms after his meeting with Dr. Adler, (*see* Compl. at 3), including "vommitting [sic] acid" while sleeping, (*see id.*). There is case law supporting Plaintiff's claim that these symptoms are extreme and/or serious. *See, e.g.*, *Lane v. Corizon Healthcare*, No. 13-CV-519, 2013 WL 5348489, at *2 (N.D. Ind. Sept. 23, 2013) (finding that plaintiff with acid reflux "ha[d] alleged a serious medical need"); *Dobbey v. Randle*, No. 10-CV-3965, 2012 WL 3544769, at *2–3 (N.D. Ill. Aug. 16, 2012) (finding that plaintiff with GERD symptoms, such as abdominal pain and blood in his stool, "[met] the objective standard, at least at the pleading stage"). *See generally Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) ("We do not . . . require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one."). Thus, taken as true for the purposes of this Motion, the Court is willing to assume that Plaintiff's

7

allegations satisfy the objective prong's requirement that he suffered serious harm during the delay in his treatment.

With respect to the subjective prong, Plaintiff's Complaint alleges three facts relevant to Dr. Adler's culpability.[4]  First, Plaintiff alleges that Dr. Adler "was talking on his cell phone while examining [him]."  (Compl. at 3.)  Second, Plaintiff alleges that, although Dr. Adler stated during the examination that he would renew the prescription, Plaintiff did not receive the refill until five days after the meeting.  (*See id.*)  Third, Plaintiff alleges that days after the meeting, Dr. Adler "stated [that] he thought . . . he put the order in."  (*Id.*)  Taken together, these facts plausibly support Plaintiff's claim that Dr. Adler caused him to suffer five days of acid-reflux-related symptoms when he failed to order the prescription refill soon after the March 28 examination.

These facts, however, do not plausibly establish that Dr. Adler acted with "a sufficiently culpable state of mind."  *Walker*, 717 F.3d at 125 (internal quotation marks omitted).  To survive this Motion, Plaintiff must allege that Dr. Adler acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin*, 467 F.3d at 280; *see also Jones*, 523 F. App'x at 50 ("[A]lthough a § 1983 claim can be based on a significant delay

---

[4] The Court notes that it is possible to construe Plaintiff's Complaint to allege acts of deliberate indifference other than those discussed in this paragraph.  For example, Plaintiff filed his first sick-call request on March 25, 2012, but he did not meet with Dr. Adler until March 28, three days later.  (*See* Compl. at 3.)  Moreover, Plaintiff submitted multiple sick-call requests after his meeting with Dr. Adler, which requests allegedly went unheeded until Plaintiff ultimately received a prescription refill on April 2, five days after the meeting.  (*See id.*)  However, Plaintiff has not alleged that Dr. Adler was personally involved in any way with the alleged nonresponsiveness to his sick-call requests.  *See Grullon*, 720 F.3d at 138 ("It is well settled that, in order to establish defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation.").  As discussed above, the Court has dismissed the claim against Dr. Gendell for similar reasons.

in receiving medical treatment, a plaintiff must allege that the individuals causing the delay had the requisite state of mind, which we have noted is the equivalent of criminal recklessness." (internal quotation marks omitted)). In other words, "the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (emphasis added). From the awareness requirement, it follows that "mere negligence is not actionable, nor is mere medical malpractice . . . tantamount to deliberate indifference." *Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (internal quotation marks omitted) (alteration in original); *see also Salahuddin*, 467 F.3d at 280 (noting that "recklessness entails more than mere negligence"). Moreover, "[t]he mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference." *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013).

Here, Plaintiff's claim that Dr. Adler's alleged carelessness caused the prescription-refill delay is not equivalent to alleging that Dr. Adler's behavior rises above the level of "mere negligence." Indeed, taken as true, Plaintiff's direct allegations indicate that Dr. Adler intended to submit the refill request, (*see* Compl. at 3 (indicating that Dr. Adler "stated [that] he thought . . . he [had] put the order in")), but that he forgot to do so because he was distracted during the March 28 examination, (*see id.* (alleging that Dr. Adler "was talking on his cell phone while examining [Plaintiff]")). In fact, in his Opposition to Defendants' Motion, Plaintiff confirms this characterization when he writes that "Dr. Adler forgot and did not put the pres[c]ription in because he was examining me while playfully talking on his cell phone." (Opp. at unnumbered 2.)

9

This is not a case where Dr. Adler personally denied Plaintiff's repeated requests for medication. *Cf. Flournoy v. Ghosh*, 881 F. Supp. 2d 980, 989–90 (N.D. Ill. 2012) (finding a genuine dispute of material fact as to whether a prison official's "failure to address [plaintiff's] repeated requests for medication and to ensure that the medical staff provided the medication without undue delay constituted deliberate indifference to his medical needs"). Moreover, Plaintiff has not alleged that Dr. Adler knowingly caused the prescription-refill delay. *Cf. Ross v. Correct Care Solutions LLC*, No. 11-CV-8542, 2013 WL 5018838, at *5 (S.D.N.Y. Sept. 13, 2013) (denying motion to dismiss a deliberate-indifference claim where defendant "was informed about [the plaintiff's] sleep apnea" but "*deliberately refused* to provide him with medical treatment . . . on account of his prior complaint and lawsuits" (emphasis added)); *Sprinkle v. Barksdale*, No. 08-CV-430, 2009 WL 1956370, at *4 (W.D. Va. July 6, 2009) ("If [plaintiff] could prove that [defendants] . . . *knowingly delayed* ordering a refill of his prescription, he would state a claim of deliberate indifference . . . ." (emphasis added)). And far from alleging that Dr. Adler failed to order the refill after becoming aware of the delay, *see Rega v. Beard*, No. 08-CV-156, 2010 WL 4869095, at *3 (W.D. Pa. Oct. 29, 2010) (recommending denial of defendants' motion to dismiss where "[p]laintiff allege[d] that [defendants] were made aware of [p]laintiff's lack of medication"), *adopted by*, 2010 WL 4861348 (W.D. Pa. Nov. 23, 2010), Plaintiff has alleged that he ultimately received the refill after Dr. Adler was informed of the delay, (*see* Compl. at 3). Given this sequence of events, it is not surprising that Plaintiff himself describes Dr. Adler's conduct as being "negligent." (*See* Compl. at 5.)

Thus, in the end, this case is similar to other cases where prisoners merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional

10

or reckless. *See, e.g.*, *Ross*, 2013 WL 5018838, at *4 (dismissing deliberate-indifference claim under Rule 12(b)(6) where plaintiff's theory that medical providers misinterpreted his statements could not satisfy plaintiff's burden to allege that the providers were "actually aware of a substantial risk [of] serious harm"); *Crique*, 2013 WL 3783735, at *3 (dismissing claim where plaintiff failed to show that defendant "knowingly or intentionally" delayed his treatment, and noting that "[w]hile delays in providing necessary medical care may in some cases demonstrate deliberate indifference, the Second Circuit has reserved those instances to cases when prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition . . . , or delayed major surgery" (internal quotation marks omitted)); *Thomas v. Westchester Cnty.*, No. 12-CV-6718, 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013) (dismissing plaintiff's claim that prison officials occasionally delayed changing his bandages because, although "not changing Plaintiff's bandages daily may potentially amount to negligence, nothing alleged in the [complaint] ma[de] it plausible that [d]efendants knew of and consciously disregarded an excessive risk to [p]laintiff's health and safety"); *Santos v. Nicholls*, No. 10-CV-3159, 2013 WL 3305336, at *5 (S.D.N.Y. July 1, 2013) (dismissing claim after finding that prison officials' "failure to provide Motrin" while plaintiff experienced pain "[a]t most . . . reflected negligence" because "there [was] no basis for the inference that [the officials] acted with the intent of causing [plaintiff] pain or that they were aware of any excessive risk posed to his health"); *Vining v. Dep't of Corr.*, No. 12-CV-3267, 2013 WL 2036325, at *6 (S.D.N.Y. Apr. 5, 2013) (dismissing claim based on a delay in treatment where plaintiff did not allege that prison officials "intended or engineered" the delay, finding instead that "[p]laintiff's claim flow[ed] from scheduling errors and . . . inadequate advocacy" for plaintiff's medical

11

needs, and that plaintiff "fell victim to the impersonal dynamic of prison medical logistics"); *Ferguson*, 2012 WL 2865474, at *5 (dismissing claim where plaintiff alleged both that he informed a prison official that he "needed his medicine," but also that the official "forgot to call" officials who could procure the medication, a mistake that "[fell] well short of the high threshold for deliberate indifference"); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735–36 (S.D.N.Y. 2002) (dismissing claim based on prison nurse's "failure to obtain a refill of [plaintiff's] . . . medication" where plaintiff's "assertions [did] not show that [the nurse] acted intentionally to withhold from him his prescribed medication or was in any way responsible for the delay in obtaining a refill").

In his Opposition to Defendants' Motion, Plaintiff cites three cases. (*See* Opp. at unnumbered 3.) However, none of these cases suggests a different result, and two of the cases actually support Defendants' Motion. First, Plaintiff cites *Farmer v. Brennan*, 511 U.S. 825 (1994), in which the Supreme Court outlined the prevailing legal standard for the deliberate-indifference analysis. *See id.* at 837 (deliberate indifference requires that a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety" and "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference"). However, the Court has applied the *Farmer* standard for deliberate indifference in this case, and because the plaintiff in *Farmer* did not allege inadequate medical care, the case is not otherwise relevant. Plaintiff cites two other cases in which the plaintiffs claimed inadequate medical care, but in both of those cases, the courts dismissed the claims after finding that the plaintiffs did not satisfy the subjective prong. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (dismissing a claim where the prison doctor's

incorrect diagnosis resulted in a two-week delay in treatment, but plaintiff was "promptly and comprehensively treated" once the mistake was corrected); *Crayton v. Quarterman*, No. 08-CV-68, 2009 WL 3740650, at *4 (N.D. Tex. Nov. 6, 2009) (dismissing claim where prison officials allegedly exacerbated plaintiff's injuries by ignoring his medical condition, but plaintiff ultimately received "prompt and appropriate attention"). Accordingly, the Court grants Defendants' Motion To Dismiss Plaintiff's § 1983 claims without prejudice.[5]

    2. State Law Claim

As previously explained, the Court interprets Plaintiff's claim for "medical negligen[ce]," (*see* Compl. at 5), as a claim also arising under state tort law. Because this claim does not present a federal question, *see* 28 U.S.C. § 1331, and because Plaintiff has not alleged that he is diverse with respect to either Defendant, *see id.* § 1332, the Court may entertain this claim only pursuant to a theory of supplemental jurisdiction, *see id.* § 1367. However, if the Court

---

[5] In his June 8, 2013, and July 4, 2013, submissions, Plaintiff suggests he might be able to add allegations to plausibly state a claim. Therefore, Plaintiff will be given thirty days to submit an amended complaint. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citation omitted)); *see also Morrissette v. Cripps*, No. 10-CV-8795, 2011 WL 4089960, at *4 (S.D.N.Y. Sept. 14, 2011) ("Because a *pro se* plaintiff should be allowed to amend his complaint in response to a motion to dismiss, the dismissal is without prejudice. . . . [and] [t]he plaintiff is granted leave to file an amended complaint within 30 days." (citation omitted)). However, Plaintiff should understand that conclusory allegations of deliberate indifference will not suffice. *See Ashcroft*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss); *see also LaMagna v. Brown*, 474 F. App'x 788, 790 (2d Cir. 2012) (dismissing a deliberate-indifference claim where plaintiff's allegation "lack[ed] a factual foundation and therefore [was] a conclusory allegation masquerading as [a] factual conclusion[]" (third and fourth alterations in original) (internal quotation marks omitted)); *Hidalgo v. Kikendall*, No. 08-CV-7536, 2009 WL 2176334, at *4 (S.D.N.Y. July 22, 2009) (dismissing deliberate-indifference claim for inadequate medical care where the "absence" of "specific allegations as to how [the defendant] allegedly acted improperly" was "fatal to [plaintiff's] complaint").

13

ultimately dismisses the federal claims against both Defendants, it need not exercise its discretion to maintain supplemental jurisdiction over the state-law claim. *See id.* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."). For now, it suffices to say that dismissal of this claim also is without prejudice to allow Plaintiff to amend his Complaint.

### III. Conclusion

For the reasons stated herein, Defendants' Motion To Dismiss is granted for all claims and both Defendants without prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 18.) The Plaintiff is given thirty days to submit an amended complaint.

SO ORDERED.

Dated: October 31, 2013
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE